2024-1037

---

# United States Court of Appeals

# for the Federal Circuit

---

**In re: GESTURE TECHNOLOGY PARTNERS, LLC,**

*Appellant,*

Appeal from the United States Patent and Trademark Office in
*Ex parte* Reexamination Control No. 90/015,900

**REPLY BRIEF OF APPELLANT
GESTURE TECHNOLOGY PARTNERS, LLC**

*/s/ Fred I. Williams*
Fred I. Williams
*Principal Attorney*
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Ave, Suite 600
Austin, TX 78701
512.543.1354 telephone
fwilliams@wsltrial.com

John Wittenzellner
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A#453
Philadelphia, PA 19103
512.543.1373 telephone
johnw@wsltrial.com

June 18, 2024

COUNSEL FOR APPELLANT GESTURE TECHNOLOGY PARTNERS, LLC

## PATENT CLAIMS AT ISSUE

Claims 1-9, 11, 12, 14-30 of U.S. Patent No. 8,553,079 are the patent claims

at issue:

1.    A computer implemented method comprising:

   providing a light source adapted to direct illumination through a work volume
   above the light source;

   providing a camera oriented to observe a gesture performed in the work
   volume, the camera being fixed relative to the light source; and

   determining, using the camera, the gesture performed in the work volume and
   illuminated by the light source.

2.    The method according to claim 1 wherein the light source includes a light
emitting diode.

3.    The method according to claim 1 wherein the light source includes a plurality
of light emitting diodes.

4.    The method according to claim 1 wherein detecting a gesture includes
analyzing sequential images of the camera.

5.    The method according to claim 1 wherein the detected gesture includes at least
one of a pinch gesture, a pointing gesture, and a grip gesture.

6.    The method according to claim 1 further including determining the pointing
direction of a finger in the work volume.

7.    The method according to claim 1 further including providing a target
positioned on a user that is viewable in the work volume.

8.    The method according to claim 1 further including determining the three-
dimensional position of a point on a user.

9.     The method according to claim 1 wherein the camera and the light source are positioned in fixed relation relative to a keypad.

11.     A computer apparatus comprising:

a light source adapted to illuminate a human body part within a work volume generally above the light source;

a camera in fixed relation relative to the light source and oriented to observe a gesture performed by the human body part in the work volume; and

a processor adapted to determine the gesture performed in the work volume and illuminated by the light source based on the camera output.

12.     The computer apparatus of claim 11 further including a display and a keyboard, wherein the work volume is above the keyboard and in front of the display.

14.     The computer apparatus of claim 11 wherein the light source includes a light emitting diode.

15.     The computer apparatus of claim 11 wherein the light source includes a plurality of light emitting diodes.

16.     The computer apparatus of claim 12 wherein the display includes a three-dimensional display.

17.     The computer apparatus of claim 11 further including a target that is viewable by the camera when in the work volume.

18.     The computer apparatus of claim 11 wherein the determined gesture includes a pinch gesture.

19.     The computer apparatus of claim 11 wherein the determined gesture includes a pointing gesture.

20.     The computer apparatus of claim 11 wherein the determined gesture includes a grip gesture.

21.    A computer implemented method comprising:

providing a camera oriented to observe a gesture performed in a work volume above the camera;

providing a light source in fixed relation relative to the camera and adapted to direct illumination through the work volume; and

detecting, using the camera, a gesture performed by at least one of a user's fingers and a user's hand in the work volume.

22.    The method according to claim 21 wherein the light source includes a light emitting diode.

23.    The method according to claim 21 wherein the light source includes a plurality of light emitting diodes.

24.    The method according to claim 21 wherein detecting a gesture includes analyzing sequential images of the camera.

25.    The method according to claim 21 wherein the detected gesture includes at least one of a pinch gesture, a pointing gesture, and a grip gesture.

26.    The method according to claim 21 further including determining the pointing direction of one of the user's fingers using the first and second cameras.

27.    The method according to claim 21 further including providing a target positioned on the user that is viewable by the camera.

28.    The method according to claim 21 further including determining the three-dimensional position of a point on at least one of the user's hand and the user's fingers.

29.    The method according to claim 21 further including providing a three-dimensional display viewable by the user.

30.    The method according to claim 21 wherein the camera and the light source are positioned in fixed relation relative to a keypad.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-1037 |
| **Short Case Caption** | In re Gesture Technology Partners, LLC |
| **Filing Party/Entity** | Gesture Technology Partners, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/18/2024

Signature: /s/ Fred I. Williams

Name: Fred I. Williams

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Gesture Technology Partners, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**FORM 9. Certificate of Interest**

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑     None/Not Applicable        ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable        ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

## TABLE OF CONTENTS

I.   STATEMENT OF RELATED CASES............................................1

II.  SUMMARY OF THE ARGUMENT ..............................................1

III. ARGUMENT..................................................................2

    A.   The Board Incorrectly Construed The "Computer Apparatus" Term In Independent Claim 11 As Not Limited To A Unitary Device..........2

    B.   *Liebermann* Does Not Anticipate Claims 1 and 11. ...........................6

    C.   *Liebermann* Does Not Anticipate Dependent Claim 8. .......................7

    D.   *Liebermann* And *Sears* Do Not Render Claims 2 And 3 Obvious. ....12

        1.   *Sears* is non-analogous art. .....................................12

        2.   The Combination of *Liebermann* and *Sears* Does Not Teach Or Suggest Claim 3.................................................15

    E.   *Liebermann* Does Not Make Out An SNQ Warranting Reexamination..................................................18

    F.   The USPTO Does Not Have Jurisdiction Over The Expired '079 Patent. ...............................................18

IV.  CONCLUSION AND RELIEF SOUGHT ..................................19

# TABLE OF AUTHORITIES

### Cases

*Burr v. Duryee,*
    68 U.S. 531 (1863) ................................................................. 6

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014) ........................................... 6

*Donner Technology, LLC v. Pro Stage Gear, LLC,*
    979 F.3d 1353 (Fed. Cir. 2020) ......................................... 18

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
    909 F.2d 1464 (Fed. Cir. 1990) ........................................... 6

*In re Cruciferous Sprout Litig.,*
    301 F.3d 1343 (Fed. Cir. 2002) ........................................... 8

*In re CSB-System Int'l, Inc.,*
    832 F.3d 1335 (Fed. Cir. 2016) ......................................... 22

*In re Nuijten,*
    500 F.3d 1346 (Fed. Cir. 2007) ........................................... 6

*In re Rambus, Inc.,*
    753 F.3d 1253 (Fed. Cir. 2014) ......................................... 22

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    138 S. Ct. 1365 (2018) ....................................................... 21

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ....................................... 7, 8

*Vitronics Corp. v. Conceptronic,*
    90 F.3d 1576 (Fed. Cir. 1996) ........................................... 9

*Wasica Fin. GmbH v. Cont'l Auto. Sys.,*
    853 F.3d 1272 (Fed. Cir. 2017) ......................................... 12

### Statutes

35 U.S.C. § 101 ............................................................................ 5

35 U.S.C. § 301 ..................................................................................................21

35 U.S.C. § 302 ..................................................................................................21

## I.  STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant Gesture Technology Partners, LLC ("GTP") states that no other appeal in or from the same proceeding in the originating tribunal was previously before this or any other appellate court.

Cases pending in this or any other court which will directly affect or be directly affected by this Court's decision in the pending appeal are listed below.

- *Gesture Technology Partners, LLC v. Apple Inc. et al.*, 2023-1463 (Court of Appeals for the Federal Circuit)

- *Gesture Technology Partners, LLC v. Apple Inc.*, 4:22-cv-04806-YGR (U.S. District Court for the Northern District of California)

- *Gesture Technology Partners, LLC v. Motorola Mobility LLC*, 1:22-cv-03535 (U.S. District Court for the Northern District of Illinois)

- *Gesture Technology Partners, LLC v. LG Electronics Inc. et al.*, 2:21-cv-19234-EP-MAH (U.S. District Court for the District of New Jersey)

## II.  SUMMARY OF THE ARGUMENT

Appellee cites no case law to support the Board's improper construction of "computer apparatus" that includes multiple devices scattered across different parts of the world.  Appellee's arguments for the Board's improper construction ignore the '079 Patent specification's repeated, consistent, and exclusive disclosure that the claimed components are disposed within the same "computer apparatus."  And Appellee offers no rebuttal to GTP's showing that under a proper claim construction (i.e., a single computing device), the distributed system of *Liebermann*, with its

1

"central processing facility" or "Center," cannot anticipate the claims of the '079 Patent. Accordingly, the Board's decision affirming the Examiner's anticipation rejections should be vacated or reversed.

Further, to support the Board's improper finding that *Sears* is analogous art, Appellee both reads, in a vacuum, the passages in *Sears* disclosing gesture determination and fabricates lighting problems that *Sears* is not trying to solve. Appellee also mischaracterizes Appellant's arguments showing the failure of *Liebermann* and *Sears* to meet the claimed light source comprising a plurality of LEDs. Accordingly, the Board's decision affirming the Examiner's obviousness rejections of claims 2, 3, 14, and 15 should be vacated or reversed.

Lastly, with respect to the USPTO lacking jurisdiction over expired patents, Appellee does not evaluate the reexamination statutes in view of the Supreme Court's *Oil States* decision and relies on case law that predates *Oil States*. The USPTO does not have jurisdiction over expired patents and the Board's decision should be vacated.

## III.    ARGUMENT

### A.    The Board Incorrectly Construed The "Computer Apparatus" Term In Independent Claim 11 As Not Limited To A Unitary Device.

It is undisputed that claim 11 falls within the "machine" category of section 101. While this Court has "consistently construed the term 'machine' to include

2

'either a singular device or a combination of devices (e.g., a system)'" (Response Br., p. 34), independent claim 11 recites an "apparatus," not a "machine." Appellee cites no case law to support its strained construction of "apparatus," the sole purpose of which is to ensnare multiple devices that are geographically distant from each other. Accordingly, the Board's interpretation of claim 11 is untenable.

Appellee's cited decisions (i.e., *Digital Image* and *Nuijten*) both quote the Supreme Court's definition of "machine" under section 101: a "concrete thing, consisting of parts, or of certain devices and combination of devices." *Burr v. Duryee*, 68 U.S. 531, 570 (1863). But the claimed subject matter in *Digital Image* and *Nuijten* was found to be patent ineligible under section 101, and the technology in *Burr* was directed towards a machine for making hats located entirely within a single factory. *See Burr* at 566-567; *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014); *In re Nuijten*, 500 F.3d 1346, 1357 (Fed. Cir. 2007). Accordingly, *Burr*, *Digital Image,* and *Nuijten* provide no support for the Board's overly broad interpretation of "apparatus" as including multiple devices that are geographically distant from each other.

Appellant cited *Hewlett-Packard* for the premise that an apparatus claim corresponds to a singular device and not multiple devices: "apparatus claims cover what a device is." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) (emphasis added). Appellee now argues that *Hewlett-Packard*

3

does not "suggest[] – let alone hold[] – that all the components of an apparatus claim must be located within a single device." Response Br., p. 36. But as just shown, *Hewlett-Packard* expressly links an apparatus claim to <u>a single device</u>. Accordingly, the limitations of an apparatus claim are the components within the single device.

In contrast, and as acknowledged by Appellee, a "system" corresponds to multiple devices. *See* Response Br., p. 34 ("a combination of devices (e.g., a system)"). As discussed in Appellant's Opening Brief, if the patentee had intended to capture multiple devices, the patentee could have easily drafted claim 11 to recite a "computer system" or even just a "system." Instead, the patentee chose to claim a "computer apparatus" to cover only a single computing device (e.g., a laptop computer, or a handheld computer, etc.). *See* Br., p. 15. It is telling that Appellee provides no rebuttal to the impact of the chosen claim language.

Further, and more importantly, "[c]laims must always be read in light of the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). "Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *Id*. at 1321. As shown in Appellant's Opening Brief, because the specification of the '079 Patent repeatedly, consistently, and exclusively discloses the claimed "light source," "camera," and "processor adapted to determine the gesture" as being disposed within

4

the same computing device, a POSITA would understand that the "computer apparatus" term means a single computing device (e.g., a laptop computer, a handheld computer, etc.) comprising all three components. *See* Br., pp. 13-14.

It is telling that Appellee provides no direct rebuttal to these unambiguous disclosures in the specification. Instead, Appellee misrepresents that Appellant is attempting to import a limitation from the specification into claim 11. *See* Response Br., p. 35. But again, that is simply not true. Appellant is merely using the specification to interpret the meaning of a term that is expressly recited by the claim. Even the Board's/Appellee's cited decision (*Cruciferous Sprout*) acknowledges the difference between the two: "interpreting what is meant by a word in a claim is not to be confused with adding an extraneous limitation appearing in the specification, which is improper." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed. Cir. 2002).

With respect to the Board's reliance on a non-contemporaneous and generic dictionary definition, Appellee asserts that the "Board cited this definition merely to confirm that its construction of the term 'apparatus' based on the intrinsic record . . . did not conflict with the <u>ordinary meaning</u> of that word." Response Br., p. 36 (emphasis added). Appellee's argument is misguided. The "ordinary meaning" of a claim term "is its meaning to the ordinary artisan after reading the <u>entire patent</u>," *Phillips*, 415 F.3d at 1321 (emphasis added). In other words, the "ordinary

5

meaning" of a claim term is based on the intrinsic record. The Board is free to consult dictionaries "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322-33. Here, the definition provided by the generic dictionary clearly conflicts with the "ordinary meaning" of "computer apparatus" in the patent (i.e., a single computing device), and should have been disregarded. *See id.*; *see also Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.").

For the aforementioned reasons, the Board's improper construction of the "computer apparatus" term in independent claim 11 should be vacated.

### B.    *Liebermann* Does Not Anticipate Claims 1 and 11.

Appellee's primary argument relies entirely on the Board's improper construction of "computer apparatus." Response Br., p. 37. But when the "computer apparatus" is properly interpreted to mean a single computing device (e.g., a laptop computer, or a handheld computer, etc.), *Liebermann's* distributed system fails to anticipate claims 1 and 11, as set forth in Appellant's Opening Brief. *See* Br., pp. 16-21.

6

Further, claim element 11[c] requires "a processor adapted to determine the gesture . . . based on the camera output." Claim 1 has a similar requirement. Appx0047 (13:8-9). Appellee argues that Appellant "fails to identify any language in claim 11 or in the specification <u>that limits</u> the processor's gesture determination to direct, unaltered output from the camera." Response Br., p. 38 (emphasis added). That is a mischaracterization of Appellant's argument. Appellant never argued that the claimed "processor" must execute gesture determination from the "direct, unaltered output from the camera." *See* Br., pp. 21-23. Instead, Appellant argued that *Liebermann's* "set of identifiers" are so drastically different from the output of *Liebermann's* camera that a POSITA would not consider a gesture determination made from *Liebermann's* "set of identifiers" to be the same as a gesture determination based on *Liebermann's* one or more "images" (the Board-identified "camera output"). *See id.* Appellee provides no rebuttal to that argument. *See* Response Br., pp. 38-39.

For the aforementioned reasons, the Board's determination that *Liebermann* anticipates claims 1 and 11 is not supported by substantial evidence, and thus should be vacated.

### C. *Liebermann* Does Not Anticipate Dependent Claim 8.

Appellee presents three rebuttal arguments to Appellant's position regarding claim 8. Each argument is addressed in turn.

First, Appellee argues that

Liebermann's reason for enhancing spatial differences is irrelevant to the anticipation inquiry so long as Liebermann's method <u>accomplishes the recited function</u>. Furthermore, Liebermann's teaching about <u>enhancing spatial differences</u> must be read in conjunction with its teaching that the determination of gestures includes <u>calculating the centers of gravity for both hands</u>.

Response Br., p. 40 (citations omitted) (emphasis added).

It is telling that Appellee's argument begins by asking the Court to disregard "Liebermann's reason for enhancing spatial differences" in favor of Appellee's interpretation of the reference. The fact is that enhancing spatial differences pertains to increasing the contrast between the user performing the gesture and their background. The same inappropriate ask underlies Appellee's assumption that the embodiment disclosing *Liebermann's* 3D camera also utilizes the processes depicted in Figures 9 and 10, which include calculating a center of gravity. *See* Appx0313 (*Liebermann*, Fig. 9), Appx0314 (*Liebermann*, Fig. 10). Appellee also assumes that when *Liebermann's* 3D camera is in use, the center of gravity is necessarily calculated in three-dimensions. But none of that is disclosed by *Liebermann*. Instead, *Liebermann's* 3D camera is mentioned only once near the very end of the reference. *See* Appx0327 (*Liebermann,*13:29-31). No details regarding the operation of the 3D camera or whether it interacts with *Liebermann's* other disclosed processes (e.g., Figures 9 and 10) are disclosed. *See id*. How "enhancing spatial differences" affects *Liebermann's* other disclosed processes (e.g., Figures 9 and 10)

8

is ambiguous.  *See id*.  All of which falls drastically short of the requirements for anticipation:  "Anticipation requires that a single reference describe the claimed invention with sufficient precision and detail to establish that the subject matter existed in the prior art.  For this reason, it has long been understood that ambiguous references do not, as a matter of law, anticipate a claim."  *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1284 (Fed. Cir. 2017) (cleaned up).

Further, the processes depicted in Figures 9 and 10, including calculating a center of gravity, are executed by *Liebermann's* "central processing facility" (i.e., "Center"), <u>not</u> by *Liebermann's* camera (3D or otherwise).  *See* Appx0322 (*Liebermann,* 4:31-36) ("FIG. 9 is a schematic representation of the modules of the <u>artificial intelligence</u> for converting signing into speech; FIG. 10 is a schematic representation of the modules for creating multiple <u>neural networks</u>.") (emphasis added); Appx0323 (*Liebermann*, 5:1-13) (explaining it is *Liebermann's* "Center" that has the "artificial intelligence" such as "neural networks.").  *Liebermann's* "Center" executes the processes of Figures 9 and 10 based a "set of identifiers," not the images themselves.  *See* Appx0322-0323 (*Liebermann*, 4:65-5:2).  But the format of *Liebermann's* "set of identifiers" is ambiguous.  *See id*.  And there is no express or inherent disclosure in *Liebermann* that any type of 3D coordinate can be determined from the "set of identifiers."  Again, that falls drastically short of the requirements for anticipation.

Second, Appellee argues that

> Because Liebermann provides a flow chart explaining the steps for capturing and processing camera data using path analysis and FFT, teaches use of "<u>coordinates</u>" and "<u>specific locations,</u>" and specifically discloses the use of "three dimensional video cameras" to "enhanc[e]" operation, one of ordinary skill would have understood the improvement <u>stemming from the use of three dimensional cameras to lie in the improved three-dimensional coordinate information supplied to the path analysis and FFT algorithm</u>.

Response Br., pp. 40-41 (citations omitted) (emphasis added).  Appellee's disjointed "quotation" from *Liebermann* undermines its own argument.  The actual quotation from *Liebermann* unambiguously states the purpose and result of using three-dimensional cameras:  "Recently, three dimensional video cameras have been developed.  The use of such devices may facilitate recognition of signing motions by enhancing spatial differences."  Appx0327 (*Liebermann*, 13:29-31).  Three-dimensional cameras help differentiate the signing user's hands from the background, which does not necessarily result in the determination of three-dimensional coordinates.  And Appellee provides no evidence to support its contention that "one of ordinary skill would have understood the improvement stemming from the use of three dimensional cameras to lie in the improved three-dimensional coordinate information supplied to the path analysis and FFT algorithm," which is contrary to the <u>express</u> disclosure of *Liebermann*.

Appellee assumes that the embodiment disclosing *Liebermann'*s 3D camera also utilizes the processes depicted in Figures 9 and 10, which include path analysis

and an FFT algorithm.  *See* Appx0313 (*Liebermann*, Fig. 9), Appx0314 (*Liebermann*, Fig. 10).  Appellee also assumes that when *Liebermann's* 3D camera is in use, the path analysis and/or FFT algorithm necessarily input or determine three-dimensional coordinates.  But as previously discussed, *Liebermann* fails to expressly or inherently disclose that.  The mere recitation of "coordinates" or "specific locations" does not necessarily equate to a "three-dimensional position of a point on a user" as recited in the claim.

As also discussed, the processes depicted in Figures 9 and 10, including the path analysis and the FFT algorithm, are performed by *Liebermann's* "Center," which only receives a "set of identifiers," not the images themselves.  Again, the format/content of the "set of identifiers" is ambiguous.  And there is no express or inherent disclosure in *Liebermann* that any type of 3D coordinate can be determined from the "set of identifiers."  That falls drastically short of the requirements for anticipation.

With respect to the alleged disclosure of "coordinates" and "locations of fingers," Appellee cites to a passage in *Liebermann* describing <u>animation</u> that will be displayed on the screen of the deaf user's device.  *See* Response Br., pp. 41 (citing Appx0327 (*Liebermann*, 13:22-28)).  *See also* Appx0323 (*Liebermann*, 5:25-35), Appx0324 (*Liebermann*, 7:14-18).  But *Liebermann* fails to disclose that the screen of the deaf user's device is three-dimensional.  Accordingly, the disclosed

"coordinates" and "locations" would not be three-dimensional or involve determining a three-dimensional position. That contradicts what claim 8 requires.

Third, Appellee argues that Appellant "provides no argument or evidence that the combined information of Stokoe's dez, sig, and tab are not a three-dimensional position." Response Br., p. 42. But claim 8 requires "determining a three-dimensional position of a point on a user." Stokoe's notation can only specify general areas (e.g., forehead, cheek), general handshapes (e.g., flat hand, fist), and general movement (e.g., moving upward, moving downward). *See* Appx0371, Appx0375, Appx0382. Stokoe's notation is not and cannot be used to determine a 3D position of a specific point, as claim 8 requires.

For the aforementioned reasons, the Board's determination that *Liebermann* anticipates claim 8 is not supported by substantial evidence, and thus should be vacated.

### D. *Liebermann* And *Sears* Do Not Render Claims 2 And 3 Obvious.

#### 1. *Sears* is non-analogous art.

Appellant maintains that *Sears'* proper field of endeavor is electronic reading machines and that the Board erred in finding *Sears'* field of endeavor to be a gesture-based system. *See* Appx0020 (citing Appx0596-0597 (Answer, pp. 69-70)). While seeking to support the Board's improper finding, Appellee identifies numerous passages in *Sears* that disclose gesture navigation and hand gesture recognition. *See*

Response Br., pp. 45 (quoting Appx0330 (*Sears*, Abstract), Appx0337 (*Sears*, 1:23-29)), 46 (quoting Appx0338 (*Sears*, 3:19-21)).  But in every one of those passages, gesture navigation and hand gesture recognition are <u>not</u> disclosed in a vacuum.  Instead, gesture navigation and hand gesture recognition are disclosed as features of an electronic reading machine.  *See, e.g.,* Appx0338 (*Sears*, 3:19-21) ("permit users to <u>designate text to be read</u> . . . through manual gestures") (emphasis added).

Appellee also notes that *Sears'* independent claim 1 recites one or more steps involving finger gesture determination.  Response Br., p. 46 (citing Appx0350 (*Sears,* claim 1)).  But Appellee conveniently omits that the preamble of *Sears'* claim 1 recites "[a] method <u>for electronically reading text</u> . . ." Appx0350 (*Sears*, 28:32-33) (emphasis added).  Again, that only reinforces that the disclosed gesture navigation and hand gesture recognition are features of an electronic reading machine.

Appellee misstates that Appellant's "[o]ther citations merely indicate how many times terms like 'OCR' and 'text' appear in Sears' specification without any further analysis."  Response Br., p. 46.  But that is simply not true.  In Appellant's Opening Brief, Appellant established that various processes such as "OCR" and "text-to-speech" are known to be associated with electronic reading machines.  *See* Br., pp. 31-32.  Appellee does not rebut that showing.  *See* Response Br., pp. 44-47.  Appellant then noted the high frequency of those terms in *Sears* to support

Appellant's position that *Sears'* field of endeavor is electronic reading machines. *See id.*

Appellant maintains that the field of endeavor for the '079 Patent is computing devices (e.g., laptop computer, handheld computer, etc.) that "operat[e] by optically sensing object or human positions and/or orientations."   Appx0041 (1:54-57), Appx0034 (Fig. 1), Appx0039 (Fig. 6).  These "human positions and/or orientations" include "gestures comprising a sequence of finger movements," and may "allow [for] typing as now, but without the physical keys."  Appx0042 (3:48-60), Appx0045 (10:23-25).  Electronic reading machines do not belong to that field of endeavor. Thus, *Sears* fails the first test for analogous art.

According to Appellee, the Board found "that the '079 patent's field of endeavor 'relates to simple input devices for computers' that 'operat[e] by optically sensing object or human positions and/or orientations.'"  Response Br., p. 44.  Even if that finding is proper, electronic reading machines also do not belong to that field of endeavor.  Thus, *Sears* still fails the first test for analogous art.

With respect to the second test for analogous art, Appellee argues that "the Board found Sears reasonably pertinent to the problem facing the inventor in the '079 patent – regardless of whether the problem is defined broadly as 'selecting a light source' or more narrowly as 'selecting a light source for use in a gesture-based environment' – because both concern illuminating an area so that a camera can better

14

capture hand movements." Response Brief, pp. 47. But as shown in Appellant's Opening Brief, "when addressing whether a reference is analogous art with respect to a claimed invention under a reasonable-pertinence theory, the problems to which both relate must be identified and compared." Br., p. 32 (quoting *Donner Technology, LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359 (Fed. Cir. 2020). *Sears* expressly discloses multiple problems it is solving, but selecting a light source is not one of them. *See* Br., pp. 32-34 (quoting Appx0337-0338 (*Sears,* 1:66-3:15)). Thus, even if the claimed invention is directed towards the problem of selecting a light source, *Sears* is not, and thus *Sears* fails the second test for analogous art. *See id.* It is telling that Appellee provided no direct rebuttal to that argument. *See* Response Br., pp. 46-47.

Because *Sears* fails both tests for analogous art, it is non-analogous art and cannot be cited in obviousness rejections of claims 2 and 3.

### 2. The Combination of *Liebermann* and *Sears* Does Not Teach Or Suggest Claim 3.

Appellee mischaracterizes Appellant's arguments regarding claim 3. *Liebermann's* Figure 5C is reproduced below:



Appx0309 (*Liebermann*, Fig. 5C) (excerpted and annotation). As shown, *Liebermann's* "public kiosk" has a row of five lamps. As discussed in Appellant's Brief, only the "bottom most lamp" could possibly qualify as the claimed "light source." *See* Br., p. 39.

According to Appellee, the "Examiner expressly found that an ordinary artisan would have been motivated to replace at least one row of lamps 48 with a row of LEDs." Response Br., p. 50. That statement corresponds to three possible replacement scenarios: (1) the five lamps are replaced with five LEDs, (2) the five lamps are replaced with four or fewer LEDs, and (3) the five lamps are replaced with six or more LEDs. But none of those replacement scenarios render claim 3 obvious.

Replacement scenario (1) does not meet the requirements of claim 3. Specifically, *Liebermann's* "bottom most lamp" (the identified "light source") would be replaced with a single LED. But claim 3 requires the claimed "light

16

source" to include "a plurality of [LEDs]," not just a single LED. *See* Appx0047 (13:13).

With respect to replacement scenario (2), the Board/Examiner failed to explain why at least two LEDs (i.e., a plurality of LEDs) (the identified "light source") would necessarily be located below the claimed "work volume," as claim 3 requires by virtue of its dependence from claim 1. *See* Appx0047 (13:4) ("a work volume <u>above</u> the light source") (emphasis added).

Replacement scenario (3) suffers from the same defects as replacement scenario (2). Additionally, replacing *Liebermann's* "bottom most lamp" (the identified "light source") with at least two LEDs (i.e., a plurality of LEDs), is not rational. According to the Board/Examiner, an LED "provides more intense light and is [a] more efficient light source [than Liebermann's] lamps." Appx0404 (Final OA, p. 19). Thus, based on the Board/Examiner's statements, substituting the "bottom most lamp" of *Liebermann's* "public kiosk 42" with a single LED would <u>already provide</u> more intense light compared to the light that was available before. Substituting the "bottom most lamp" of *Liebermann's* "public kiosk 42" with multiple LEDs (i.e., a plurality of LEDs) is unnecessary and only increases the circuit complexity with little return. Again, that is not rational. Thus, there is no motivation to combine *Liebermann* and *Sears* in that manner.

17

For the aforementioned reasons, the Board's determination that the combination of *Sears* and *Liebermann* renders claim 3 obvious is not supported by substantial evidence, and thus should be vacated.

### E.    *Liebermann* Does Not Make Out An SNQ Warranting Reexamination.

According to Appellee, Appellant's "SNQ argument is based on the same faulty premise as its novelty arguments, and it collapses for the same reasons." Response Br., p. 51.   But as shown above, *Liebermann* fails to anticipate the independent claims.   In other words, Appellant's arguments do <u>not</u> "collapse." Accordingly, the order for *ex parte* reexamination should be vacated for all the reasons set forth in Appellant's Brief.  *See* Br., pp. 46-47.

### F.    The USPTO Does Not Have Jurisdiction Over The Expired '079 Patent.

Appellee argues that the statues authorizing reexamination "do not limit the timing of reexamination."  Response Br., p. 54 (citing 35 U.S.C. §§ 301, 302).  The fact that Sections 301 and 302 do not address expired patents does not change the fact that when a patent expires, the public franchise ceases to exist and the franchisee no longer has the right to exclude others.  *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018).   Because the public franchise no longer exists, the Patent Office has nothing in its authority to cancel or amend an expired patent.  Appellee does not dispute this logic.

Instead, Appellee argues that Appellant "has not and cannot establish that its right to exclude others under the '079 patent ended when the patent expired." Response Br., p. 53. Appellant agrees that an expired patent may form the basis of an infringement suit. In other words, Appellant fully agrees that Article III courts have jurisdiction over expired patents. But the issue raised before the Court is whether the USPTO has jurisdiction to reexamine an expired patent.

Appellee also identifies several cases where this Court reviewed the Board's decision even though the patent under reexamination had expired prior to the Board issuing its decision. *See* Response Br., p. 54 (citing *In re Rambus, Inc.*, 753 F.3d 1253 (Fed. Cir. 2014); *In re CSB-System Int'l, Inc.*, 832 F.3d 1335 (Fed. Cir. 2016)). But those cases are inapposite because they were decided before *Oil States* and the issue of the USPTO's jurisdiction of expired patents was not raised in those cases.

## IV.  CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons and all the reason specified in Appellant's Brief, Appellant respectfully requests that the Court (1) vacate the Board's claim construction for the "computer apparatus" term in independent claim 11, (2) vacate or reverse the Board's determinations that claims 1-9, 11, 12, and 14-30 are anticipated or rendered obvious by the cited art, (3) vacate the order granting *ex parte* reexamination of claims 1-9, 11, 12, and 14-30, and (4) vacate the Board's Decision because the USPTO does not have jurisdiction over expired patents.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on June 18, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:　　　June 18, 2024　　　　　　　*<u>/s/ Fred I. Williams</u>*
　　　　　　　　　　　　　　　　　　　　Fred I. Williams

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2024-1037

**Short Case Caption:**  In re: Gesture Technology Partners, LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  4,220  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 06/18/2024          Signature:  /s/ Fred I. Williams

Name:  Fred I. Williams

Save for Filing